IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


SANDRA NEWBILL, on behalf of
N. NEWBILL,                            :

     Plaintiff,                       :

vs.                                    :

                                CIVIL ACTION 08-0348-KD-M

MICHAEL J. ASTRUE,                     :
Commissioner of
Social Security,                       :

     Defendant.                       :


REPORT AND RECOMMENDATION


In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1]
seeks judicial review of an adverse social security ruling which
denied a claim for Supplemental Security Income (hereinafter
*SSI*).  The action was referred for report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was waived
in this action (Doc. 22).  Upon consideration of the
administrative record and the memoranda of the parties, it is
recommended that the decision of the Commissioner be affirmed,
that this action be dismissed, and that judgment be entered in
favor of Defendant Michael J. Astrue and against Plaintiff Sandra
Newbill, on behalf of N. Newbill.

This Court is not free to reweigh the evidence or substitute

---

[1]Even though this action was brought by his mother, the child
will be referred to as Plaintiff.

its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence.  *Richard-*

*son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evi-

dence test requires "that the decision under review be supported

by evidence sufficient to justify a reasoning mind in accepting

it; it is more than a scintilla, but less than a preponderance."

*Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting*

*Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was

seven years old and was in the first grade (Tr. 76-77).  In

claiming benefits, Plaintiff alleges disability due to fine motor

delays, asthma, and a speech impediment (Doc. 13 Fact Sheet).

The Plaintiff filed an application for SSI on February 6,

2006[2] (Tr. 119-22).  Benefits were denied following a hearing by

an Administrative Law Judge (ALJ) who determined that Newbill was

not disabled (Tr. 57-71).  Plaintiff requested review of the

hearing decision (Tr. 53-56) by the Appeals Council, but it was

denied (Tr. 2-4).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Newbill alleges

that:  (1) The ALJ improperly determined that one of his

---

[2]February 6, 2006 is the date on the SSI application, although
the ALJ states that the application was filed on January 9, 2006 (Tr.
60).

impairments was not severe; and (2) the ALJ incorrectly determined that his impairments did not equal the listing of impairments (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 16).

Plaintiff first claims that the ALJ improperly determined that one of his impairments was not severe.  More specifically, Newbill argues that the fine motor delay which he suffers in his hands is a severe impairment (Doc. 13, pp. 4-7).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2008).[3]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p,

---

[3] "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

"evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."[4]

Records from the South Alabama Children's and Women's Hospital show that Newbill received Occupational Therapy from November 21, 2005 through February 21, 2007 for an initial diagnosis of significant weakness in his upper extremities and fine motor delays; Plaintiff was to attend therapy on a weekly basis (Tr. 269; *see generally* Tr. 237-74).  Short term goals (less than three months) were to establish a dominant hand and to use proper grasp; long term goals (six months) were to independently write his name, increase his B hand grasp by ten pounds, and to independently feed himself with a spoon with less than two incidences of spillage (Tr. 269).  A note from December 2005 indicated that Newbill's goals had not been attained or changed as he had only attended one of four sessions that month and had not been practicing (Tr. 267); a report from January 2006 showed minimal attendance and practice (Tr. 265).  The report from February showed better attendance (Tr. 262).

Plaintiff's school teacher, of four and one-half months, completed a questionnaire on February 20, 2006 which stated,

---

[4]The Court notes that since our claimant is a child and a child's work is his ability to be a child and do things that a child does, *e.g.*, schoolwork, that will be the Court's concern.

specifically, that Newbill has "a very serious problem" in that

he "does not have very much strength in his hands.  This is one

reason he has a hard time writing" (Tr. 169; *see generally* Tr.

165-72).  The teacher had also indicated that when she gives him

a written test, she "write[s] his answers down for him" (Tr.

166).  Plaintiff also spills food when he eats and gets it on his

mouth (Tr. 170).

The March Occupational Therapy report stated that a dominant

hand had been established (Tr. 260).  Plaintiff made two of four

sessions in April 2006, one of five in May, and failed to go to

Occupational Therapy at all in June; it was indicated that his

progress had been minimal (Tr. 254, 256, 258).  Newbill attended

three of four sessions in June; he was said to be making slow

progress (Tr. 252).  A report on August 30 stated that

Plaintiff's right hand grip strength was about half of what would

be expected for someone his age while the left hand grip strength

was about one-third of expectations; the Therapist stated,

though, that he had "made significant progress in [fine motor]

skills" since the initial evaluation (Tr. 251).  Newbill attended

two of five sessions in August and only one in September;

nevertheless, his "progress remain[ed] slow, but is improving

somewhat" (Tr. 248, 250).  Plaintiff attended one session each in

October, November, and December (Tr. 244, 246).

A second questionnaire, completed by another teacher, on

November 27, 2007, noted that he has problems with gripping and
applying pressure when using a pencil, though there had been
improvement with assistance (Tr. 190; *see generally* Tr. 186-93).

An Occupational Therapy evaluation was performed on January
3, 2007 which reported that he had significant delays in fine
motor precision, integration, manual dexterity, and upper limb
coordination (Tr. 240).  However, his hand strength, bilaterally,
was within the low end of the range for his age (*id.*).  It was
recommended that he continue therapy with new short- and long-
term goals (Tr. 239).[5]

The ALJ found that Newbill was less than markedly limited in
his ability to move and manipulate objects, noting that an
evaluation form completed by the State Agency on May 15, 2006 had
reached the same conclusion (Tr. 69; *cf.* Tr. 214).  Plaintiff
asserts that the ALJ should not have relied on the State
Reviewer's opinion and noted that the ALJ failed to discuss the
Occupational Therapy records at all (Doc. 13, pp. 4-7).

The Court agrees with Plaintiff in his assertion that the
ALJ should have discussed the Occupational Therapy records.
However, the Court has reviewed those records, summarized them
herein, and noted that Newbill has been largely non-compliant

---

[5]Short-term goals were to independently write his name, catch a
ball with both hands, throw a ball at a target, and accurately orient
scissors to cut out a medium-sized square.  The main long term goal
was to independently feed himself with a spoon with only two spills.

with a therapeutic regimen which would improve his impairment.
Those records routinely state that Plaintiff's minimal progress
was a function of his non-attendance and failure to practice, at
home, the things for which he was being given instruction.

The Social Security regulations state that "[i]n order to
get benefits, you must follow treatment prescribed by your
physician if this treatment can restore your ability to work."
20 C.F.R. § 1530(a) (2008).  The regulation goes on to state that
"[i]f you do not follow the prescribed treatment without a good
reason, we will not find you disabled or, if you are already
receiving benefits, we will stop paying you benefits."  20 C.F.R.
§ 404.1530(b) (2008); *see also Dawkins v. Bowen*, 848 F.2d 1211,
1213 (11th Cir. 1988).

The Court finds that the very evidence which Newbill has
argued should have been considered by the ALJ demonstrates
Plaintiff's non-compliance with treatment.  As such, the ALJ's
error can be considered, at most, harmless.  Newbill's claim is
without merit.

Plaintiff next claims that the ALJ incorrectly determined
that his impairments did not equal the listing of impairments.
This claim arises out of the first claim and an assertion that
the ALJ should have found that Plaintiff's fine motor delay in
his hands caused an extreme limitation in the Domain of Moving
About and Manipulating Objects (Doc. 13, pp. 7-8).  The Court

notes that a finding of extreme limitation in one domain is a
finding that the claimant's impairments functionally equal the
listings.   20 C.F.R. § 416.926a(d) (2008).[6]

The regulation, for this Domain, states the following:

> In this domain, we consider how you move
> your body from one place to another and how
> you move and manipulate things.  These are
> called gross and fine motor skills.
>        (1) General. (I) Moving your body
> involves several different kinds of actions:
> Rolling your body; rising or pulling yourself
> from a sitting to a standing position;
> pushing yourself up; raising your head, arms,
> and legs, and twisting your hands and feet;
> balancing your weight on your legs and feet;
> shifting your weight while sitting or
> standing; transferring yourself from one
> surface to another; lowering yourself to or
> toward the floor as when bending, kneeling,
> stooping, or crouching; moving yourself
> forward and backward in space as when
> crawling, walking, or running, and
> negotiating different terrains (*e.g.*, curbs,
> steps, and hills).
>        (ii) Moving and manipulating things
> involves several different kinds of actions:
> Engaging your upper and lower body to push,
> pull, lift, or carry objects from one place
> to another; controlling your shoulders, arms,
> and hands to hold or transfer objects;
> coordinating your eyes and hands to
> manipulate small objects or parts of objects.
>        (iii) These actions require varying
> degrees of strength, coordination, dexterity,
> pace, and physical ability to persist at the
> task.  They also require a sense of where

---

[6]"We will decide that your impairment(s) functionally equals the
listing if it is of listing-level severity.  Your impairment(s) is of
listing-level severity if you have 'marked' limitations in two of the
domains in paragraph (b)(1) of this section, or an 'extreme'
limitation in one domain."

your body is and how it moves in space; the
integration of sensory input with motor
output; and the capacity to plan, remember,
and execute controlled motor movements.
        (2) Age group descriptors.

***
        (iv) School-age children (age 6 to
attainment of age 12).  As a school-age
child, your developing gross motor skills
should let you move at an efficient pace
about your school, home, and neighborhood.
Your increasing strength and coordination
should expand your ability to enjoy a variety
of physical activities, such as running and
jumping, and throwing, kicking, catching and
hitting balls in informal play or organized
sports.  Your developing fine motor skills
should enable you to do things like use many
kitchen and household tools independently,
use scissors, and write.

20 C.F.R. § 416.926a(j) (2008).

     The evidence which Plaintiff has brought forward shows that

he has an impairment of fine motor delay in his hands.  However,

there has been no showing that Newbill is unable to engage in

most of the activities discussed in § 416.926a(j); certainly,

there has been no showing that Plaintiff's impairment amounts to

extreme limitation in this domain.  Plaintiff's claim otherwise

is without merit.

     Upon consideration of the entire record, the Court finds

"such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Perales*, 402 U.S. at 401.

Therefore, it is recommended that the Secretary's decision be

affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir.

1980), that this action be dismissed, and that judgment be

entered in favor of Defendant Michael J. Astrue and against

Plaintiff Sandra Newbill, on behalf of N. Newbill.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.   Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of
this document, file specific written objections with the clerk of
court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  See 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736,
738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th
Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the
findings and recommendations of the magistrate judge is set out
in more detail in SD ALA LR 72.4 (June 1, 1997), which provides
that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a
> matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing
> a "Statement of Objection to Magistrate Judge's
> Recommendation" within ten days after being served with
> a copy of the recommendation, unless a different time
> is established by order.  The statement of objection
> shall specify those portions of the recommendation to
> which objection is made and the basis for the
> objection.  The objecting party shall submit to the
> district judge, at the time of filing the objection, a
> brief setting forth the party's arguments that the
> magistrate judge's recommendation should be reviewed *de
> novo* and a different disposition made.  It is
> insufficient to submit only a copy of the original
> brief submitted to the magistrate judge, although a
> copy of the original brief may be submitted or referred
> to and incorporated into the brief in support of the
> objection.  Failure to submit a brief in support of the
> objection may be deemed an abandonment of the
> objection.
>
> A magistrate judge's recommendation cannot be appealed to a

Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        DONE this 3rd day of March, 2009.


                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE